## ISAAC PUSEY *vs.* THE POTOMAC BRIDGE COMPANY.

Materials for building a bridge, delivered by the contractor at the place designated by the bridge company, accepted and paid for by them in pursuance of the contract under which the bridge was to be built, are, upon the abandonment of the work by the contractor, (which contingency was provided for in the contract,) the *absolute property* of the company, and are not liable to attachment by the creditors of the contractor.

APPEAL from the Circuit Court for Frederick county.

*Attachment,* sued out by the appellant, on the 2nd of May

1853, against the lands, tenements, goods, chattels and credits of Abraham Bowers, a non-resident debtor, and on the same day laid upon a lot of pine and hemlock timber in the hands of the Potomac Bridge Company. The account on which the attachment issued amounted to $1164.74, and the property attached was appraised at $2654, and by agreement of counsel was sold, under order of the court, by the sheriff, who had the proceeds of sale, to wit, the sum of $1505, in his hands ready for condemnation. The bridge company appeared as claimant of part of the goods so attached, and filed a plea to that effect, upon which issue was joined. It was agreed, that all the other property levied on, except that claimed by the bridge company, had been condemned for the use of prior attaching creditors.

*1st Exception.* The bridge company, the claimant, offered in evidence its charter, and a written contract between them and Bowers, dated the 11th of September 1850, the execution and delivery of which was proved, for building a bridge across the Potomac river, at the Point of Rocks. The terms of this contract necessary to be stated are:—1st, that Bowers was to build the bridge according to specifications annexed to the contract, and "to furnish all the materials" necessary therefor, according to the specifications, of such quality as the engineer of the company may approve. 2nd, during the progress of the work, the engineer was to make monthly estimates of the work done, "and of all suitable materials procured for the bridge" by Bowers "and delivered by him on the ground of the company, or at such place or places as may be designated for the purpose by the engineer of the company," four-fifths of which estimates were to be paid by the company and the remaining fifth retained until the work was completed, when a final estimate was to be made and the balance paid; and these estimates were to be conclusive between the parties. 3rd, Bowers was to commence the work within thirty days from the date of the contract, give his personal attention to its execution, conduct it under the supervision and control of the engineer, and complete it by the 1st of December 1851; and in case he should fail to commence or complete it within said times, or if

he should "disobey any of the written orders of the engineer or shall violate any of the express conditions of this agreement, then, on a certificate of the fact by the engineer," the company "may declare this contract abandoned, and the said company shall thereupon be exonerated from every obligation thence arising, and the reserved per centage on the work done and materials previously estimated, as well as all materials furnished and work performed on which no estimate or payment may have been made, shall be forfeited to and become the right and property of the said bridge company," and they may then agree with any other person to complete the work. By the proposal to build the bridge, Bowers agreed that all damage done to the work by high water, or in any other manner during the construction of the work, should be at his risk.

It was then proved, that the timber in question was furnished by Bowers under this contract, and delivered partly upon the land of Chesapeake and Ohio Canal Company and in part upon the land of Mr. Smith; that the place of delivery was designated with the concurrence of the engineer, the land of the canal company being used with his consent, as agent of that company, and that of Smith under an agreement between him and Bowers; that it was embraced in the monthly estimates and paid for by the bridge company; that after the estimates were made, it was considered the property of the bridge company placed under the control of Bowers, as agent of the company, for him to put such work upon it as would enable him to comply with his contract, and he had no further control or custody of it than is usual in all such cases on public works. Bowers continued the work under the contract until the 21st or 22nd of April 1853, when he abandoned the work and absconded. The fact of this absconding was certified to the company by the engineer, on the 26th of April 1853, by letter, recommending the abandonment of the contract, which recommendation was adopted by the company, by a resolution passed at a meeting of the president and directors of the company on the day following. The property in question remained at the place of delivery up to the time of Bowers' absconding, and until levied on by the attachment in this case. On the part of

the attaching creditor, Pusey, it was proved, that at the times of making the estimates and payments he was a *bona fide* creditor of Bowers, without actual notice of the claim of property by the bridge company other than that derived since the levy of the attachment. The claimant then asked the following instructions to the jury:

1st. If they find the execution of the contract, the delivery of the materials in controversy by Bowers, in pursuance thereof, at places designated or concurred in by the engineer, that they were embraced in the estimates and paid for by the company prior to the absconding of Bowers, and prior to the issuing and levy of the attachment in this case, then the property in said materials vested in the bridge company, and the claimant is entitled to recover them.

2nd. If, in addition to the facts in the preceding prayer, the jury find that Bowers abandoned the work prior to the issuing and levying the attachment in this case, and left the materials in question at the places designated or concurred in by the engineer, and that they were purchased to be used in the construction of the bridge, and were embraced in the estimates and paid for by the company prior to the absconding of Bowers and the issue and levy of the attachment in this case, then the title thereto vested in the bridge company, and that the attaching creditor is not entitled to condemnation thereof.

The court (NELSON, J.) granted both these prayers, and to this ruling the plaintiff excepted.

*2nd Exception.* The plaintiff then asked instructions, embracing the following propositions of law:

1st. That the right of property in the materials did not pass to the company so as to defeat the right of the attaching creditor acquired by the levy, because they had not been applied to the construction of the bridge, and their application yet remained under the contract subject to the approval or rejection of the engineer, and therefore something yet remained to be done by Bowers in and upon said materials.

2nd, 3rd and 4th. That there was no sufficient sale or transfer of possession of the materials from Bowers to the company as against the *bona fide* creditors of Bowers, but that the pre-

tended sale thereof was fraudulent and void as against such creditors, the materials having been furnished by Bowers and having remained in his actual and visible possession and control after the estimates and payments made thereon by the bridge company.

5th. That no right of property in the materials vested in the company as against the *bona fide* creditors of Bowers, under the provisions of the contract relating to the abandonment of the work, even if Bowers did so abandon it.

6th. That there was no sufficient declaration of the abandonment by the company of the contract with Bowers, in conformity with the provisions thereof, so as to vest a right of property in the materials in the company as against the plaintiff, a *bona fide* creditor of Bowers.

7th. That the company is not entitled to recover if the property was seized, under the writ of attachment, prior to any declaration of abandonment by the company of the contract, as provided for therein.

8th. That upon the pleadings and evidence in the cause the company is not entitled to recover, because the estimates and payments made, as provided for in the contract, are not sufficient to prove a right of property in the materials in question in the company as against a *bona fide* creditor of Bowers, and because there has been no sufficient declaration of abandonment of the contract by the company, as provided for therein.

The court rejected each and all of these prayers, and to this ruling the plaintiff excepted, and the verdict and judgment being in favor of the company, appealed.

The cause was argued before ECCLESTON, TUCK and MASON, J.

*J. Shaaff Stockett* and *R. T. Merrick* for the appellant, argued:

1st. That the contract between Bowers and the bridge company, was a contract for the construction of a bridge by Bowers out of materials procured by and belonging to him, and not for the sale and delivery of such materials; and that under

such a contract, no title to any materials being used in building such a structure could pass to the company so long as any work remained to be done upon them by Bowers, or so long as they remained subject to the future approval or rejection of the company by the terms of the contract, but that the title thereto remained in Bowers until all work contracted to be done on these materials was completed, and until they were made part of the structure being erected. *Chitty on Cont.*, 378. 1 *Taunt.*, 318, *Mucklow vs. Mangles.* 4 *Mees. & Wels.*, 686, *Tripp vs. Armitage.* 6 *Taunt.*, 322, *Cotterell vs. Apsey.* 11 *Mees. & Wels.*, 248, *Clark vs. Bulmer.* 3 *New Hamp.*, 382, *Davis vs. Hill.* 16 *Pick.*, 30. 9 *Gill*, 294, *Rodemer vs. Hazlehurst & Co.*

2nd. That there was no sufficient transfer of the possession of these materials, but that the pretended sale of them was fraudulent and void as against the *bona fide* creditors of Bowers. 7 *Term Rep.*, 67, *Manton vs. Moore.* 4 *Adol. & Ellis*, 448, *Clarke vs. Spence.* 4 *Mees. & Wels.*, 686, *Tripp vs. Armitage.* The possession required to be given to pass a valid title as against creditors must be a *substantial, bona fide and exclusive possession.* *Chitty on Cont.*, 414. 1 *Esp.*, 205, *Paget vs. Perchard.* 1 *Camp.*, 333, *Wordall vs. Smith.* 5 *Verm.*, 231, *Judd vs. Langdon.* 2 *Aik.*, 64, *Weeks vs. Mead.* 2 *Kent*, 518. 7 *G. & J.*, 417, *Franklin, et al., vs. Long.* Possession must not only be *substantial, bona fide and exclusive,* but it must be a *continuing* possession. 8 *Verm.*, 356, *Morris vs. Hyde.* 2 *Whart.*, 302, *Streeper vs. Eckart.* 2 *Watts & Sergt.*, 147, *Young vs. McClure.* 6 *Do.*, 94, *McBride vs. McClelland.* 1 *Smith's Lead. Cases*, 1, 65. Such is the rule of law upon this subject as pronounced in England and this country, requiring that the possession transferred in order to pass a valid title as against creditors shall be a *substantial, bona fide, exclusive and continuing* possession, and that fraud is a necessary inference from the fact of the vendor's remaining in possession. The security given to creditors by this rule, and the protection it afforded to the public against fraud and imposition from secret sales, was not deemed sufficient in this State. By the act of 1729, ch. 8, it is enacted,

that no goods or chattels whereof the donor shall *remain in possession* shall pass, alter or change, or any property therein be transferred to any purchaser, mortgagor or donor, unless the same be in writing, duly acknowledged and recorded. Under this act fraud is not an inference · from the fact of possession, but remaining in possession is itself declared to be fraudulent, and made by express enactment to defeat the passing of any property in the goods attempted to be sold, *unless* notice is given of such sale by the public records. The act having then provided a means by which a transfer of title may be effected and sufficient notice given, though the vendor remain in possession, it has relieved the question as to the character of the possession to be deemed a sufficient transfer of property, from all embarrassment, and made it imperative that the vendor should adopt the mode of transfer it has prescribed, unless he transfers to the vendee such *substantial, entire and exclusive* possession and control as will make manifest, beyond doubt, the change of title.

3rd. That the provision in the contract as to the abandonment thereof by the bridge company, and the passing of the property to the company upon the contingencies therein mentioned, was a mortgage or pledge of the property, giving to the company an inchoate right therein or a conditional lien thereon from the date of the contract, and therefore within the provisions of the act of 1729, ch. 8.

4th. That the declaration of abandonment by the bridge company was not a sufficient declaration of abandonment under the contract.

*Bradley T. Johnson* and *Joseph M. Palmer* for the appellee, argued, that the rulings of the court below were correct:

1st. Because the contract between the bridge company and Bowers was a good and binding contract in law, and is fully proved to have been executed and delivered, and is *divisible* in its character. 11 *Wheat.*, 237 to 261, *Perkins vs. Hart.* 14 *Wend.*, 257, *Sickels vs. Pattison.* 9 *Gill*, 294, *Rodemer vs. Hazlehurst & Co.*

2nd. Because the materials, or goods and chattels *in dispute*,

and which were levied on by the appellant, were furnished by Bowers under his contract with the bridge company, and were delivered by him at the place or places designated for such delivery by the engineer of the company, or at the places which were concurred in by the engineer and the company, and had been estimated and paid for, as required by the contract, long before the issuing or levy of the attachment of the appellant, by which delivery, estimate and payment, the goods legally passed to the appellee, as between the contracting parties *and all other persons whatever*, and were not liable to be attached by the appellant. Manucaption delivery is not necessary in all cases. Where goods are not susceptible of manucaption delivery constructive delivery is good. 2 *Kent,* 500. 1 *East,* 194, *Chaplin vs. Rogers.* 7 *G. & J.,* 407, *Franklin, et al., vs. Long.* 4 *Gill,* 270, *Van Brunt vs. Pike & Ward.* 12 *Mass.,* 300, *Jewett vs. Warren.* 7 *Term Rep.,* 67, *Manton vs. Moore.* 6 *Md. Rep.,* 10, *Atwell vs. Miller & Mayhew.* The delivery in this case is not obnoxious to the statute of 13 *Eliz., ch.* 5. 3 *Coke,* 80, *Twyne's case.* 2 *Term Rep.,* 587, *Edwards vs. Harben.* *Prec. in Ch.,* 285, *Bucknal vs. Roiston.* *Cowp.,* 432, *Cadogan vs. Kennet.* 2 *Bos. & Pull.,* 59, *Kidd vs. Rawlinson.* 10 *Ves.,* 145, *Lady Arundell vs. Phipps.* 1 *Maule & Selw.,* 251, *Leonard vs. Baker.* 4 *Taunt.,* 823, *Watkins vs. Birch.* 7 *Do.,* 149, *Benton vs. Thornhill.* 1 *Ryan & Moody,* 312, *Eastwood vs. Brown.* 4 *Barn. & Cres.,* 652, *Latimer vs. Batson.* 3 *Kent,* 517, 518, 519. 1 *Powell on Mortgages,* 39. 3 *Cranch,* 73, *United States vs. Hooe.* 4 *Wheat.,* 503, *Wheaton vs. Sexton.* 1 *Pet.,* 449, *Conrad vs. Atlantic Ins. Co.* 15 *Mass.,* 244, *Brooks vs. Powers.* 2 *New Hamp.,* 13, *Haven vs. Low.* 3 *Do.,* 415, *Coburn vs. Pickering.* 8 *Cowen,* 406, *Seward vs. Jackson.* 7 *Wend.,* 436, *Jackson vs. Timmerman.* 1 *Pick.,* 288, *Bartlett vs. Williams.* 2 *Do.,* 607. 3 *Do.,* 255, *Wheeler vs. Train.* 7 *Do.,* 56, *Shumway vs. Rutter.* 8 *Do.,* 443, *Shumway vs. Rutter.* 43 *Law Lib.,* 35 to 60. The tendency of American authorities is stated in 1 *Powell on Mortgages, Am. notes,* 34. See also 7 *Term Rep.,* 67, *Manton vs. Moore.* Nor is the delivery in this case obnoxious to the

statute of Maryland of 1729, ch. 8, sec. 5. 1 *H. & J.*, 3, *Garrett vs. Hughlett.* 3 *Do.*, 499, *Bruce vs. Smith.* 2 *H. & G.*, 415, *Hudson vs. Warner & Vance.* 1 *Md. Rep.*, 519, *Bryan vs. Hawthorne.*

3rd. Because Bowers did not prosecute his work to completion without intermission according to contract, but abandoned his work and contract, leaving the bridge in an incomplete state before the issuing and levy of the attachment of the appellant, and also leaving the goods and chattels upon which the attachment was levied at the places which had been designated for their delivery, and which had been paid for before the attachment issued; and because the company had lawfully declared the contract abandoned before the issuing and levy of the appellant's attachment, by which abandonment of Bowers and declaration of abandonment of the company, the materials delivered, work done, and reserved *per centage*, were forfeited and became the property of the company. 9 *Gill*, 289, *Rodemer vs. Hazlehurst.* 8 *G. & J.*, 420, *Clary vs. Frayer.*

MASON, J., delivered the opinion of this court.

We are of opinion that the materials which were the subject of the present attachment, having been delivered upon the company's ground, or such other place as was designated by their agent, accepted and paid for by the company in pursuance of the agreement, upon the work having been abandoned by Bowers, (a contingency provided for in the contract,) they became absolutely the property of the company. Under such circumstances it cannot be successfully contended that "the vendor, mortgagor or donor, remained in possession" of those materials, so far as to defeat the title of the company, or "to procure to himself credit" in the community, so as to contravene the act of 1729, ch. 8.

*Judgment affirmed.*